Not For Publication

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 07-31363 (LMW) |
| | ) | | |
| RICHARD J. DEBSKI | ) | CHAPTER | 7 |
| a/k/a RYSZARD J. DEBSKI, | ) | | |
| | ) | | |
| DEBTOR. | ) | | |
| | | | |
| DIANA G. ADAMS, United States | ) | ADV. PRO. NO. | 08-3094 |
| Trustee, Region 2, | ) | | |
| | ) | DOC. I.D. NO. | 17 |
| PLAINTIFF | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| RICHARD J. DEBSKI, | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

## APPEARANCES

| | |
|---|---|
| Steven E. Mackey, Esq. | Attorney for the United States Trustee |
| Office of the United States Trustee | |
| The Giaimo Federal Building | |
| 150 Court Street, Room 302 | |
| New Haven, CT 06510 | |
| | |
| Richard J. Debski[1] | Defendant/ Debtor, *Pro Se* |
| 35 McNeil Terrace | |
| Stratford, CT 06614 | |

---

[1] The above-referenced debtor (the "Debtor") is *pro se* in this adversary proceeding but is represented by counsel in the bankruptcy case.

-1-

**MEMORANDUM OF DECISION RE:**
**MOTION FOR DEFAULT JUDGMENT**

Lorraine Murphy Weil, United States Bankruptcy Judge

The matter before the court is the United States Trustee ("UST") Motion For Default Judgment (Doc. I.D. No. 17, the "Motion")[2] pursuant to which the UST seeks entry of a judgment against the Debtor revoking his chapter 7 discharge pursuant to Bankruptcy Code §§ 727(d)(1) and 727(a).  This court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and that certain order dated September 21, 1984 of the District Court (Daly, J.).[3]  This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**I.     FACTS**[4]

    **A.     The Chapter 7 Case**

The Debtor commenced this chapter 7 case by petition (Case Doc. I.D. No. 1) filed on June 15, 2007.  Together with the petition, the Debtor filed Bankruptcy Schedules A-J. (*See* Case Doc. I.D. No. 1, the "Schedules.")  On the Schedules, the Debtor averred that he owned no real property,

---

[2]     Citations herein to the docket of this adversary proceeding appear in the following form: "Doc. I.D. No. __."  Citations herein to the docket of the above-captioned chapter 7 case appear in the following form: "Case Doc. I.D. No. __."

[3]     That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . . "

[4]     The recitation of facts which follows is gleaned from the case files of this adversary proceeding and of this bankruptcy case, the transcript of the Section 341 Meeting (as hereafter defined) and the affidavit (the "Affidavit") and the exhibits (cited as: "Exh. __") filed by the UST in support of the Motion.

owned personal property valued at $2,961.41, had no secured creditors and had no unsecured priority creditors. (*See* Schedules.) On Schedule F (Creditors Holding Unsecured Nonpriority Claims), the Debtor listed only credit card debt in the sum of $223,833.00. (*See id.*) Schedule F listed sixteen (16) different credit cards.[5] Finally, the Debtor stated that he was unemployed and had no expenses. (*See* Schedules.)

By letter dated June 26, 2007 to Timothy M. Pletter, Esq., bankruptcy counsel for the Debtor, the UST requested (the "Request") information and documentation from the Debtor, including tax returns, financial account statements and credit card statements (the "C/C Statements"). (*See* Exh. 2.) Specifically, the Request sought C/C Statements issued to the Debtor between June 1, 2006 through June 1, 2007 "for all credit cards now and/or formerly used or maintained by the [D]ebtor." (*Id*.) The production sought by the Request was to be provided to the UST by July 15, 2007.

The meeting of creditors held pursuant to 11 U.S.C. § 341 (the "Section 341 Meeting") was held on July 24, 2007.[6] At the Section 341 Meeting, the Debtor testified in pertinent part as follows:

> MR. FLAMINI:[7] All right. You have unsecured debt that you scheduled of $223,833. Can you tell me what you did with that money or what you charged?
> MR. DEBSKI: Spend it.
> MR. FLAMINI: On - - can you tell - - on what?
> MR. DEBSKI: Food - - interest on - - on those credit cards, I was paying, you know, taking from one credit card paying the other credit cards.

---

[5] According to the UST, the Debtor failed to list one additional credit card and that card's balance of $24,000.00. (*See* Motion at 2 n.1.)

[6] The transcript (the "Transcript") of the Section 341 Meeting is annexed to the Motion as Exhibit 5. Initially, the UST filed an incomplete Transcript. Pursuant to an order (*see* A.P. Doc. I.D. No. 22) of the court, the UST then filed the Transcript in its entirety (*see* A.P. Doc. I.D. No. 24).

[7] Joseph Flamini is a paralegal with the Office of the UST and the affiant of the Affidavit.

| | |
|---|---|
| MR. FLAMINI: | When is the last time you took a cash advance? |
| MR. DEBSKI: | I didn't pay any - - any credit cards since January. |
| MR. FLAMINI: | When was the last time you took a cash advance? |
| MR. DEBSKI: | I think I wrote check, last check like was what, in October last year. |
| MR. FLAMINI: | That was last time you took a cash advance on any of your credit cards? |
| MR. DEBSKI: | Yeah. |
| MR. FLAMINI: | And how much, can you tell me how much that was for? |
| MR. DEBSKI: | I don't know. That was like 3,000, 3500 dollars (inaudible) and I wrote the minimum payment and it was gone. |
| MR. FLAMINI: | On - - on your credit card Washington Mutual of $20,000 was any of that for cash advances? |
| MR. DEBSKI: | I think it was some, you know, I was paying from one card to the other. |
| MR. PLETTER: | Joe, could you just define for him what you mean by a cash advance. |
| MR. FLAMINI: | Whether it's a, you know, a - - a check that you get that, you know - - |
| MR. DEBSKI: | A convenience check, yeah. |
| MR. FLAMINI: | - - sometimes credit cards will give you a check that you can write out - - |
| MR. DEBSKI: | Yeah. |
| MR. FLAMINI: | - - or if you actually advanced through an ATM. Yeah, something - - |
| MR. DEBSKI: | I never - - I never use ATM, you know, for the - - any cash advance. |
| MR. FLAMINI: | And so - - the same - - you know, like a check. |
| MR. PLETTER: | But if you used AT&T to pay Bank of America, which I think he's done a lot for many years. |
| MR. FLAMINI: | And I'll see that though, Tim, probably through his - - if I get 12 months of his statements, I'll be able to see - - |
| MR. PLETTER: | I agree. |
| MR. FLAMINI: | I mean, for instance, if he borrows 10,000 from one card and he pays 8,000 on another, then I'll know, you know - - I mean, we'll work with you to try to get through these documents, but I need the documents. With the amount of debt that you have and your income situation, we're required to look at this information. |
| MR. DEBSKI: | Yeah, but like when I - - when I spoke with my attorney, this situation, you know, I don't have the money right now, you know. |

(Transcript at 13:10 — 16:10.) The Section 341 Meeting then was continued to August 31, 2007 in order to permit the Debtor to comply with the Request.

When the Debtor failed to respond to the Request, the UST served a subpoena (the "Subpoena") dated August 6, 2007. (*See* Exh. 3.) The Subpoena requested that the Debtor "produce and permit inspection" of the documents sought by the Request as well as documents pertaining to the financing and ownership of real property situated at 35 McNeil Terrace, Stratford. The Subpoena required that the foregoing documents be produced on or before September 6, 2007. (*See id*.)

By letter dated August 7, 2007, Attorney Pletter responded to the Request. (*See* Exh. 4.) That response provided some information and some of the documents sought by the Request. With respect to the request for the C/C Statements, Attorney Pletter stated: "The [D]ebtor is working on obtaining copies of his credit card statements from each creditor." (Exh. 4.)[8] The Debtor was granted his chapter 7 discharge (Case Doc. I.D. No. 15, the "Discharge") on October 1, 2007.

When no further documents were forthcoming, on October 12, 2007, the UST filed that certain Motion for an Order Compelling the Production of Documents (Case Doc. I.D. No. 19, the "Motion To Compel") seeking the documents sought pursuant to the Subpoena.[9] On November 8, 2007, an order (Case Doc. I.D. No. 24, the "Order To Compel") entered granting the Motion To Compel. The Order To Compel provided for a list of documents (including the C/C Statements) to

---

[8] Apparently, each monthly C/C Statement from individual credit card companies would cost the Debtor $5.00. (*See* Transcript at 10 (testimony of the Debtor).) As noted, the Debtor scheduled 16 different credit cards. The Debtor testified that he did not have the money at the time to get all the C/C Statements. (*See id*. at 10, 16 (testimony of the Debtor).)

[9] The Motion To Compel stated that some documents were produced and the remaining documents were alleged to be forthcoming. When the UST did not receive those documents, she filed the Motion To Compel.

be produced by the Debtor on or before November 30, 2007.  In November, 2007, the Debtor produced some C/C Statements.  However, at least 137 C/C Statements were never produced by the Debtor.  (*See* Affidavit, ¶ 4.)[10]

Because the Debtor failed to comply fully with the Order To Compel, on March 27, 2008, the UST filed that certain *Ex Parte* Motion for Examination of the Debtor Richard J. Debski Pursuant to Bankruptcy Rule 2004.  (*See* Case Doc. I.D. No. 26, the "Rule 2004 Motion.")  On April 18, 2008, the Rule 2004 Motion was granted.  (*See* Case Doc. I.D. No. 29, the "Rule 2004 Order.")[11]

Pursuant to the Rule 2004 Order, the Rule 2004 examination (the "Rule 2004 Examination") initially was scheduled for May 19, 2008, after entry of the Discharge.  (*See* Affidavit, ¶ 7.)  The Debtor failed to appear on that date, cited a family health issue and requested that the Rule 2004 Examination be rescheduled.  (*See id.*)  The Rule 2004 Examination was rescheduled to June 30, 2008.  On that date, the Debtor again failed to appear, stated (through counsel) that he would not

---

[10]   With respect to five credit cards, the Affidavit states that the Debtor failed to produce C/C Statements for "6/06 through 5/06." (Affidavit, ¶ 5.)  Based on the description of the missing C/C Statements relating to the other credit cards, the court recognizes that a scrivener's error was made and that "5/06" was intended to be "5/07."

[11]   The UST also filed a Rule 2004 Motion seeking to examine Tracey Moore, an individual the UST contended (among other things) may have been in possession of documents and information in respect of the Debtor's financial condition.  (*See* Case Doc. I.D. No. 27.)  That motion also was granted (*see* Case Doc. I.D. No. 28).

appear and did not seek a further continuance of the Rule 2004 Examination. (*See id.*)[12] On April 13, 2009, the chapter 7 trustee filed his Report of No Distribution. (*See* Case Docket Entry.)

### B. The Adversary Proceeding

The UST filed the complaint (A.P. Doc. I.D. No. 1, the "Complaint") that initiated this adversary proceeding on July 18, 2008. The Complaint seeks a revocation of the Discharge pursuant to Bankruptcy Code § 727(d)(1) on the stated ground that the Debtor gave false testimony under oath at the Section 341 Meeting in violation of Bankruptcy Code § 727(a)(4).[13]

On July 28, 2008, the Complaint (together with a valid summons) were duly served upon the Debtor. (*See* A.P. Doc. I.D. No. 7.)[14] On December 10, 2008, a pretrial order entered (which required the Debtor to file a responsive pleading by August 21, 2008) and, on December 12, 2008, was served on the Debtor in this adversary proceeding. (*See* A.P. Doc. I.D. Nos. 10 and 12.)

The Debtor has failed to plead or otherwise defend in this adversary proceeding. On motion (A.P. Doc. I.D. No. 11) of the UST, the Clerk entered a default against the Debtor on December 16, 2008, which default was served on the Debtor on December 18, 2008. (*See* A.P. Doc. I.D. Nos. 13, 14.) On May 1, 2009, the UST filed the Motion seeking a judgment of default on the Complaint.

---

[12] The Rule 2004 Order authorized the Rule 2004 Examination but did not require the Debtor's attendance. Rather, the Rule 2004 Order provided: "[T]he Movant may examine the Debtor pursuant to Bankruptcy Rule 2004(a), and within the scope of Fed. R. Bankr. P. 2004(b), with attendance, and the production of documentary evidence, by agreement, or compelled in the manner provided in Fed. R. Bankr. P. 9016, see Fed. R. Bankr. P. 2004(c)." The UST makes no reference to an applicable "agreement" or to issuance of a subpoena in accordance with Rule 9016.

[13] The Complaint also sought revocation of the Discharge pursuant to Bankruptcy Code § 727(d)(1) and Sections 727(a)(3), (a)(5) or (a)(6).

[14] The Debtor's bankruptcy counsel also was served electronically with a copy of the summons and Complaint. (*See id.*) The court notes that service was made on July 28, 2008 but the Certificate of Service was dated and filed on November 24, 2008. (*See id.*)

Annexed to the Motion were eight exhibits. The Motion was scheduled for a hearing (the "Hearing") on May 27, 2009. (*See* A.P. Doc. I.D. No. 18.) A copy of the Motion and a copy of the notice of the Hearing was served on the Debtor on May 5, 2009. (*See* A.P. Doc. I.D. No. 19.)[15] The Hearing was held as scheduled. The Debtor did not appear at the Hearing and the court took the matter under advisement.

**II.    LEGAL STANDARD**

    **A.    The Default Judgment Standard**

A debtor who is named as a defendant in an adversary proceeding with respect to matters relating to discharge is always deemed to have appeared in the adversary proceeding for purposes of Rule 55(b)(2) of the Federal Rules of Civil Procedure (made applicable here by Rule 7055 of the Federal Rules of Bankruptcy Procedure). *See Katz v. Araujo (In re Araujo)*, 292 B.R. 19 (Bankr. D. Conn. 2003) (revocation of discharge by default judgment). However, a court may enter default judgment against an appearing party when that party has failed to plead or otherwise defend their side of the case under Rule 55. In order to obtain a default judgment, the "plaintiff must demonstrate a *prima facie* case by competent evidence . . . ." *Citibank USA, N.A. v. Spring (In re Spring)*, No. 04-3007, 2005 WL 588776, at *2 (Bankr. D. Conn. Mar. 7, 2005) (citation and internal quotation marks omitted).

    **B.    Revocation of Discharge**

"[I]t is axiomatic that the extraordinary relief of a bankruptcy discharge is reserved for the honest but unfortunate debtor." *Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 702 (Bankr. D. Colo.

---

[15]     A copy of the documents also was served on the Debtor's bankruptcy counsel. (*See id.*)

2005). Furthermore, "the relief of a bankruptcy discharge is not an absolute right, but rather, a privilege accorded honest debtors who provide full and honest disclosure to creditors and otherwise satisfy bankruptcy statutory obligations." *Casa Investments Co. v. Brenes (In re Brenes)*, 261 B.R. 322, 329 (Bankr. D. Conn. 2001) (Dabrowski, J.). Although it is a harsh result that a debtor that has already been granted a discharge should have that discharge revoked, "Congress could not have expressed its will more clearly than it did in §727." *Muniz, supra.*

In this revocation action, the court "must construe section 727(d) strictly against the objecting party and in favor of the debtor." *Marshall v. Wilson (In re Wilson)*, No. 01-1058-JMD, 2002 WL 1067450, at *4 (Bankr. D. N.H. May 28, 2002). Because the Motion is one for default judgment and the Debtor is not actively opposing its entry, the UST only must establish a *prima facie* case showing that grounds for revocation of discharge exist under Bankruptcy Code § 727(d)(1). *See In re Spring, supra* at *2.

The pertinent portions of Bankruptcy Code § 727 provide in relevant part:

> (a) The court shall grant the debtor a discharge, unless –
>      . . .
>     (4) the debtor knowingly and fraudulently, in or in connection with the case–
>         (A) made a false oath or account;
>      . . .
> (d) On request of the . . . United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if–
>     (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>      . . .
> (e) The . . . United States trustee may request a revocation of a discharge–
>     (1) under subsection (d)(1) of this section within one year after such discharge is granted . . . .

11 U.S.C.A. § 727 (West 2010).

### 1. Bankruptcy Code § 727(d)(1)

To revoke the discharge under Bankruptcy Code § 727(d)(1), the UST must demonstrate that (1) the Debtor obtained the Discharge through fraud; and (2) she did not have knowledge of such fraud until after the granting of the Discharge. *See Adams v. Zembko (In re Zembko)*, 367 B.R. 253, 256 (Bankr. D. Conn. 2007) (Krechevsky, J.).

To satisfy the first element of Section 727(d)(1), it is necessary to show that the discharge was "'obtained through' the fraud. '[O]btained through' is causation language." *White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 925 (9th Cir. 2004). In other words, the "fraud must be proven in the procurement of the discharge and sufficient grounds must have existed which would have prevented the discharge." *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 925 (B.A.P. 9th Cir. 1994). *See also Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991) ("As a general rule, to obtain relief under § 727(d)(1), it is insufficient that a debtor's fraud rendered a particular debt nondischargeable; claimant must allege that the entire discharge would not have been granted but for debtor's fraud."). Consequently, if the plaintiff is able to prove all the elements that would satisfy a denial of discharge under Bankruptcy Code § 727(a), such proof is "sufficient to demonstrate that . . . [the] discharge was 'obtained through the fraud of the debtor' for purposes of § 727(d)(1)." *Tighe v. Valencia (In re Guadarrama)*, 284 B.R. 463, 470 (C.D. Cal. 2002).

> Further, the
>
> fraud required to be shown [under the first element] is fraud in fact, such as the intentional omission of assets from the debtor's schedules. The fraud required to be shown must involve intentional wrong, and does not include implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality.

6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 727.15[2], at 727-74 (15 ed. rev. 2008) (footnotes omitted). *See also Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr. D. Ohio 2004) ("The standard of fraud contemplated by § 727(d)(1) is . . . the type of fraud that, had the circumstances been timely known, would have prevented the debtor from receiving a discharge in the first place.").

To satisfy the second element of Section 727(d)(1), the party seeking revocation must show that it did not acquire the knowledge of the relevant fraud until after discharge entered. *See Edmonds*, 924 F.2d at 180 ("Such fraud must be discovered after discharge to effectuate revocation under § 727(d)."); *Pelletier v. Donald (In re Donald)*, 240 B.R. 141, 146 (B.A.P. 1st Cir. 1999) ("Revocation is restricted to fraud which is discovered after the discharge, and a party requesting revocation has the burden of proving its lack of knowledge of the fraud before the discharge."). *See also Johnson v. Chester Housing Authority (In re Johnson)*, 250 B.R. 521, 528 (Bankr. E.D. Pa. 2000) ("[W]hen a creditor knows or should know of any possible fraudulent conduct, the creditor has a duty to establish a timely and diligent investigation of the facts to succeed in satisfying this prong.").

### III.   ANALYSIS

#### A.   Whether the Debtor Obtained the Discharge through Fraud?

Here, the UST alleges that the Debtor obtained the Discharge by fraud pursuant to Bankruptcy Code § 727(a)(4).[16]

---

[16] Because the court has determined that the UST is entitled to prevail under Section 727(a)(4), the court will not address Sections 727(a)(3), (a)(5) and (a)(6).

In order to make out a case under Section 727(a)(4)(A), the plaintiff must establish that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the statement was made with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Brenes*, 261 B.R. at 334.[17] Statements made by a debtor at a Section 341 meeting fall within the purview of Section § 727(a)(4) as statements made under oath. *See United States of America v. Argenti (In re Argenti)*, 391 B.R. 671, 675 (Bankr. D. Conn. 2008) (Shiff, J.); *New World Restaurant Group, Inc. v. Abramov (In re Abramov)*, 329 B.R. 125, 132 (Bankr. E.D.N.Y. 2005).

A statement is deemed to be made with knowledge of its falsity if it was known by the debtor to be false or if it was made with reckless disregard for the truth. *D.A.N. Joint Venture, L.P. v. Cacioli (In re Cacioli)*, 285 B.R. 778, 784 (Bankr. D. Conn. 2002) (Dabrowski, J.), *aff'd*, 332 B.R. 514 (Conn. 2005), *aff'd*, 463 F.3d 229 (2d Cir. 2006). *See also Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 922 (Bankr. D. Utah 2006) ("[R]eckless indifference to the truth . . . has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)." (citation and internal quotation marks omitted)). Since a plaintiff rarely can produce direct evidence of fraudulent intent, a court may infer fraudulent intent from circumstantial evidence. *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 575 (Bankr. N.D. Ill. 2000). "[A] court may infer fraudulent intent under Section 727(a)(4)(A) from a debtor's reckless indifference to or cavalier disregard for the truth." *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993)

---

[17] With respect to the material relationship to the bankruptcy case, this court accepts the following formulation: "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984).

(Shiff, J.) (citation omitted). Where persuasive evidence of a false statement under oath has been produced by a party, the burden shifts to the debtor to prove that the statement was not intentionally false. *Id.* Fraudulent intent may be inferred if the false statement is not satisfactorily explained. *Id.*

Here, the UST contends that the Debtor made two false statements under oath at the Section 341 Meeting: (1) he testified that the last cash advance he took from his credit cards was in October, 2006 and (2) he testified that the amount of that cash advance was between $3,000.00 and $3,500.00. (*See* Transcript at 14.) Because the foregoing testimony by the Debtor qualify as statements made under oath, *see Argenti, supra*, the first element is satisfied.

According to the C/C Statements provided to the UST by the Debtor, the Debtor took cash advances totaling at least $21,020.00, not between $3,000.00 and $3,500.00 as testified to by the Debtor. (Affidavit, ¶ 4.) Furthermore, the Debtor took out that sum in cash advances between September 26, 2006 and January 24, 2007, after the October, 2006 time frame testified to by the Debtor. (*Id.*)[18] Consequently, based on the evidence before the court, the court concludes that the UST has made out a prima facie case that the subject statements were false and the second element is satisfied.

The court finds that the UST has made out a prima facie case that the Debtor made the statements with knowledge of their falsity and with the requisite fraudulent intent. The court is not persuaded that the Debtor's testimony of taking only $3,500.00 in cash advances instead of the actual amount of $21,020.00 was inadvertent or mistaken testimony. The disparity between the amounts is so great that, on this record, the court is satisfied that the Debtor testified with "reckless disregard"

---

[18] The UST contends that, because the Debtor failed to produce at least 137 credit card C/C Statements, the true amount of cash advances taken up to the petition date will never be known. *See id.*

as to the truth. *See Raleigh v. Raleigh (In re Raleigh)*, No. 05-2468, 2006 WL 4452839, at *1 (Bankr. D. N.J. Apr. 17, 2006) ("[R]eckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge."). While the disparity in the time frame for advances may not be as significant as the disparity in total cash advances obtained, the cumulative effect of the two disparities when taken together establishes a prima facie case of the requisite intent. Consequently, a prima facie case as to the third and fourth elements has been made.

The Debtor scheduled unsecured credit card debt of $223,833.00 and personal property of only $2,961.41. In light of the foregoing, there is at least a reasonable inquiry to be made into the Debtor's accurate financial picture to determine what the Debtor purchased to accumulate the excessive credit card debt and the disposition of such purchases. Consequently, an accurate total of credit card advances and when such advances were obtained were information "material" to the Debtor's complete financial picture. Therefore, a prima facie case as to the final element is met. Consequently, the UST has made out a prima facie case for the denial of discharge under Bankruptcy Code § 727(a)(4) and the UST has, therefore, satisfied the first element of Bankruptcy Code § 727(d)(1). *See Guadarrama*, *supra* at 470.[19]

---

[19] It may be that the Debtor testified inaccurately because he did not retain the requisite C/C Statements and did not have access to the copies of the C/C Statements because he could not afford to obtain them. The Debtor testified more or less to that effect at the Section 341 Meeting. *See* note 8, *supra*. However, although the Transcript can be used as evidence *against* the Debtor, it cannot be used as evidence in his favor. Had the Debtor testified to like effect in this adversary proceeding (and had he testified to a non-culpable reason for his failure to retain the C/C Statements, *cf*. 11 U.S.C. § 727(a)(3)), the court would have considered such evidence. However, given the Debtor's failure to defend and the resulting state of the record, the court concludes that the UST has made out a prima facie case under Section 727(a)(4).

**B.** **Whether the UST had Knowledge of the Fraud Prior to the Entry of the Discharge**

In the Affidavit, the following statement is made:

> To the best of my knowledge and belief, neither I nor any other United States Trustee personnel discovered that the Debtor had made false statements about his possible concealment of assets or uttered a false statement or oath prior to my analyzing his few credit card statements in November 2007.

(Affidavit, ¶ 4.) The evidence before the court tends to support the foregoing statement. The time line here shows that the UST could not have acquired the requisite knowledge of the Debtor's fraud until after the Discharge entered. The Debtor made the fraudulent statements with respect to the cash advances at the Section 341 Meeting that was held on July 24, 2007 and concluded on August 31, 2007. The Discharge entered on October 1, 2007. The Debtor did not provide the C/C Statements to the UST until November, 2007. Therefore, prior to that time the UST was unable to dispute the statements made by the Debtor at the Section 341 Meeting. Therefore, the UST has made out a prima facie case that she did not acquire knowledge of the fraudulent statements until after the Discharge entered.

**IV.** **CONCLUSION**

For the reasons discussed above, the UST has established a prima facie case for revocation of the Discharge pursuant to Bankruptcy Code § 727(d)(1). Therefore, the court grants the Motion and a judgment will enter revoking the Discharge.

Dated: February 23, 2010                                    BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
United States Bankruptcy Judge